IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Matthew Sarber, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | **COMPLAINT AND JURY DEMAND** |
| Communication Federal Credit Union, | ) | |
| Brantley & Brantley Adjusters, Inc., | ) | |
| Gregory D. Bribiesca DBA Hulk Towing & | ) | |
| Collateral Recovery, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## NATURE OF ACTION

1.      Plaintiff Matthew Sarber brings this action against Defendants Communication Federal Credit Union ("CFCU"), Brantley & Brantley Adjusters, Inc. ("Brantley"), and Gregory D. Bribiesca DBA Hulk Towing and Collateral Recovery ("Bribiesca"), pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, 42 U.S.C. § 1983, the First and Fourteenth amendments of the United States Constitution, Article 9 of the Kansas Uniform Commercial Code, Kan. Stat. § 84-9-101 *et seq.*, and Kansas common law.

## JURISDICTION, VENUE, AND STANDING

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where Defendants transact business in this district.

4.      "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992).

5.      "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)).  Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing.  *See id.* at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA."); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

6.      "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition." *Lane*, 2016 WL 3671467 at *4 (emphasis in original).

**THE FAIR DEBT COLLECTION PRACTICES ACT**

7.      Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v.*

*Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

8.      To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute [and] proof of one violation is sufficient to support summary judgment for plaintiffs on their federal claim" *Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1046 (W.D. Wis. 2002).

9.      In order to offer the greatest protections to consumers, "the FDCPA is a strict liability statute – a collector 'need not be deliberate, reckless, or even negligent to trigger liability." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009); *see also Anderson v. Credit Bureau Collection Services, Inc.*, 422 Fed. Appx. 534, 539 (7th Cir. 2011) ("This means [Plaintiff] is entitled to sue to enforce [the FDCPA's] provisions, even the "highly technical" ones . . .").

10.      "Because the FDCPA is designed to protect consumers, it is liberally construed in favor of consumers to effect its purpose." *Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1040 (N.D. Ill. 2008).

*11.*      "[C]laims against debt collectors under the FDCPA are to be viewed through the eyes of the 'unsophisticated consumer' . . . the standard is low, close to the bottom of the sophistication meter." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996); *see also Gammon v. GC Servs. Ltd. P'ship,* 27 F.3d 1254, 1257 (7th Cir. 1994) ("an unsophisticated consumer standard protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness.").

12.     For the purpose of 15 U.S.C. § 1692f(6), a "debt collector" also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  15 U.S.C. § 1692a(6).

13.     The FDCPA prohibits such persons, such as tow operators or repossession companies, from taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right or intention to take possession of the property.  15 U.S.C. § 1692f(6).

## 42 U.S.C. § 1983

14.     42 U.S.C. § 1983 protects citizens from state deprivations of their constitutional rights, including the right to be free from unreasonable seizures. *Maldonado v. Municipality of Barceloneta,* 682 F.Supp.2d 109 (D.P.R.2010).

15.     Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811, 127 L. Ed. 2d 114 (1994); *Baker v. McCollan,* 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979).

16.     To maintain a cause of action under 42 U.S.C. § 1983, Plaintiff must show (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived Plaintiff of rights secured by the Constitution or laws of the United States. *Chopmist Hill Fire Dep't v. Town of Scituate*, 780 F. Supp. 2d 179, 187 (D.R.I. 2011).

17.     Under some circumstances, however, the conduct of private parties may be deemed to be state action when the "conduct allegedly causing the deprivation of a federal right may be fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

18.     Whether the conduct may in fact be "fairly attributed" to the state requires a two-part inquiry. "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id. See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (explaining that, to state a claim under § 1983, the plaintiff must show: (i) deprivation of a right that the federal constitution or federal laws secure; and (ii) that a person acting under color of state law caused the deprivation).

19.     State action exists if a private party is a "willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) (quoting *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)).

20.     Courts look to "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher v. Neil Young Freedom Concert,* 49 F.3d at 1453. "[I]f there is a substantial degree of cooperative action between state and private officials . . . or if there is overt and significant state participation, in carrying out the deprivation of the plaintiff's constitutional rights, state action is present." *Id.* at 1454 (internal quotations and citations omitted).

## THE UNIFORM COMMERICAL CODE

21.     "Article 9 of the UCC is a comprehensive statutory scheme governing the rights and relationships between secured parties, debtors, and third parties."   *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 53, 644 S.E.2d 43, 49 (2007).

22.     Article 9 serves "to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." *Haas' Estate v. Metro–Goldwyn–Mayer, Inc.*, 617 F.2d 1136, 1140 (5th Cir. 1980).

23.     After a default, the UCC gives secured parties the right to repossess collateral. *See* Kan. Stat. § 84-9-609(b)(2).

24.     There is one restriction, however, which the law imposes upon this right. It must be exercised without provoking a breach of the peace; and, if a secured party finds that it cannot get possession without committing a breach of the peace, it must stay its hand, and resort to the law.  *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 152 (Tex. 1992).

25.     This is so because the preservation of peace, "is of more importance to society than the right of the owner of a chattel to get possession of it." *Willis v. Whittle,* 82 S.C. 500, 64 S.E. 410 (1909); *see also Singer Sewing Mach. Co. v. Phipps,* 49 Ind.App. 116, 94 N.E. 793 (1911) (quoting 3 William Blackstone, Commentaries *4) ("[T]his natural right of recaption shall never be exerted, where such exertion must occasion strife . . . or endanger the peace of society.").

## CONVERSION UNDER KANSAS COMMON LAW

26.     Under Kansas law, "conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of

the other's rights." *Alexander v. BF Labs Inc.*, No. CV 14-2159-KHV, 2016 WL 5243412, at

*5 (D. Kan. Sept. 22, 2016), *appeal dismissed,* No. 16-609, 2016 WL 9997919 (10th Cir. Dec.

9, 2016) (quoting *Bomhoff v. Nelnet Loan Servs., Inc.*, 279 Kan. 415, 421, 109 P.3d 1241, 1246

(2005)).

27.     To prevail on a conversion claim, plaintiffs must prove that: (1) they possessed

a right in the goods or personal chattels; and (2) defendant exercised control over the goods or

chattel to the exclusion of their right. *See In re Bratt*, 491 B.R. 572, 578 (Bankr. D. Kan.

2013); *Bank v. Parish*, 46 Kan. App.2d 422, 433, 264 P.3d 491, 498 (2011).

## PARTIES

28.     Mr. Sarber is a natural person who at all relevant times resided in the State of

Kansas, County of Kiowa, and City of Mullinville.

29.     Mr. Sarber is allegedly obligated to pay a debt.

30.     Mr. Sarber is a "consumer" as defined by 15 U.S.C. § 1692a(3).

31.     Defendant, CFCU, is a credit union that regularly purchases consumer paper in

the form of automobile loans, or originates vehicle loans.

32.     CFCU is a "secured party" as defined by Kan. Stat. § 84-9-102(a)(73).

33.     Defendant, Brantley, is an Oklahoma corporation that at all relevant times was

acting as a repossession agent working at the behest of CFCU.

34.     At all relevant times Brantley was an entity using instrumentalities of interstate

commerce or the mails in any business the principal purpose of which is the enforcement of

security interests.

35.     Brantley is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

36.     Defendant, Bribiesca, is an individual operating a towing and repossession business operating under the name "Hulk Towing & Collateral Recovery" located at 6270 W. Jones Ave. in Holcomb, Kansas.

37.     Bribiesca is a motor carrier licensed by the Kansas Corporation Commission, KCC MCID # 171124.

38.     Bribiesca, at all relevant times was acting as a repossession agent working at the behest of CFCU and Brantley.

39.     At all relevant times Bribiesca was a person using instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

40.     Bribiesca is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

41.     On or about February 5, 2015 Mr. Sarber purchased a 2010 Ford F-150 (the "Vehicle") from non-party, Rusty Eck Ford, Inc.

42.     Mr. Sarber purchased the Vehicle primarily for his own personal, family, and household use.

43.     The Vehicle constitutes "consumer goods" as defined by Kan. Stat. § 84-9-102(a)(23).

44.     Mr. Sarber could not afford to purchase the vehicle outright, so he financed it.

45.     Thereafter, Mr. Sarber refinanced his purchase with CFCU, and executed a loan agreement in CFCU's favor (the "Contract").

46.     A true and accurate copy of the Contract is attached to this complaint as Exhibit A.

47.     As part of the agreement, CFCU obtained a security interest in the Vehicle.

48.     The Vehicle constitutes "collateral" as defined by Kan. Stat. § 84-9-102(a)(12).

49.     Thereafter Mr. Sarber made his payments on the vehicle as agreed via a preauthorized automatic payment plan.

50.     In late 2017, CFCU began to believe that Mr. Sarber was behind on his loan.

51.     On or about April 9, 2018, CFCU engaged its repossession agents Brantley to repossess Mr. Sarber's vehicle.

52.     Thereafter, Brantley engaged its repossession agent, Bribiesca, to repossess Mr. Sarber's vehicle.

53.     On April 9, 2018, at approximately 8:45 P.M., Bribiesca went to Mr. Sarber's home to repossess the Vehicle.

54.     Mr. Sarber noticed Bribiesca arrival, and before Bribiesca could take possession or control of the Vehicle, he ran out and immediately protested the repossession loudly and unequivocally.

55.     Mr. Sarber showed Bribiesca written proof that he had paid as agreed, but Bribiesca disregarded the proof and continued with his repossession over Mr. Sarber's protests.

56.     Mr. Sarber advised Bribiesca that if he continued with the repossession, that Mr. Sarber would be forced defend his property.

57.     As the confrontation was escalating, Mr. Sarber's wife called the Sheriff for help.

58.     Shortly thereafter, a Sheriff's deputy from the Kiowa County Sheriff's office, Tyler Finch, arrived on the scene.  Around this same time a Kansas Highway Patrolman, Lothman, arrived on the scene as well.

59.     Lothman and Finch spoke with both parties and advised Mr. Sarber that Bribiesca had a repossession order.

60.     Mr. Sarber showed both officers proof that he had made his payments as alleged and demanded that the officers remove Bribiesca from his property.

61.     The officers then went to talk to Bribiesca.

62.     During this conversation Bribiesca convinced the officers that he had a right to take Mr. Sarber's vehicle and directed them to assist him in doing so.

63.     Thereafter, the officers, for nearly forty minutes, attempted to convince Mr. Sarber to allow Bribiesca to take the Vehicle, and Mr. Sarber consistently refused.

64.     During this time, Finch threatened Mr. Sarber with arrest for his actions in disputing the repossession.

65.     Thereafter, the officers, clearly frustrated, had a conference amongst themselves in front of Mr. Sarber's garage.

66.     During this conference, Finch advised Lothman that regardless of what happened, he was going to allow Bribiesca to take the Vehicle.

67.     Finch suggested to Lothman that they simply arrest Mr. Sarber to allow the repossession to go forward.

68.     Lothman agreed, and the officers then returned to Mr. Sarber and informed him that he needed to remove his items from the Vehicle because Bribiesca was taking it.

69.     Mr. Sarber refused to allow the vehicle to be taken, and the officers again told him to remove his items.

70.     Mr. Sarber continued his protest and implored Bribiesca not to take his vehicle.

71.     The already heated situation escalated.

72.     The officers seized Mr. Sarber physically by the wrists.

73.     Mr. Sarber protested and eventually the officers released him.

74.     Mr. Sarber, facing arrest or further violence at the hands of the officers, felt he had no other option but to comply and did as the officers instructed.

75.     Bribiesca again told Finch that he needed the keys to the vehicle.

76.     Finch then told Mr. Sarber and his wife that he needed to turn the keys over to Bribiesca.

77.     Mr. Sarber refused to do so and his wife did not know where the keys were.

78.     Finch then undertook to complete a brief search of Mr. Sarber's garage for the keys.

79.     Eventually Mr. Sarber's wife found the keys and turned them over as Finch had commanded.

80.     Bribiesca then advised Finch that he was unable to tow the vehicle as it was currently situated, and that he would have to pull the vehicle out on the street and tow it from the opposite end.

81.     Finch allowed Bribiesca to do so, and Bribiesca completed his repossession.

82.     Finch escorted Bribiesca out and advised him that he admired him.

83.     Thereafter, Mr. Sarber contacted Bribiesca to inquire about retrieving the personal property still in the vehicle.

84.     Bribiesca refused to provide Mr. Sarber the personal property that was still in the vehicle.

85.     As a result of losing his vehicle, Mr. Sarber lost his position as a contract employee with the telephone company and accordingly suffered actual damages in excess of $75,000.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692f(6)(A)
## BRIBIESCA

86.     Mr. Sarber repeats and re-alleges each factual allegation contained above.

87.     Kansas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." Kan. Stat. § 84-9-609(b)(2).

88.     However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. *Id.*

89.     A repossession agent breaches the peace if he continues with a repossession over a consumer's protest. *See Marcus v. McCollum,* 394 F.3d 813, 820 (10th Cir. 2004); *Dixon v. Ford Motor Credit Co.*, 72 Ill. App. 3d 983, 988, 391 N.E.2d 493, 497 (1979); *Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 812, 508 N.W.2d 449, 455 (Ct. App. 1993) ("We conclude that the undisputed fact is that Hollibush or her fiancé told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."); *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App. 1973), *dismissed* (Apr. 3, 1974) (because consumer protested repossession secured party was forced to either go to court or repossess vehicle at time when the consumer would not notice and protest); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f [a] repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *First &*

*Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[I]t is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."); *Morris v. First Nat. Bank & Tr. Co. of Ravenna*, 21 Ohio St. 2d 25, 30, 254 N.E.2d 683, 686 (1970); *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110, 387 S.E.2d 144, 146 (1989) (agreeing with most courts that repossession in the face of a debtor's oral protest constitutes a breach of the peace); *Martin v. Dorn Equip. Co.*, 250 Mont. 422, 427, 821 P.2d 1025, 1028 (1991) (quoting J. Sheldon & R. Sable, *Repossessions,* § 6.3 (1988)) (" '[T]he general rule is that the creditor cannot . . . seize any property over the debtor's objections.' ").

90.     Mr. Sarber loudly, and unequivocally protested Bribiesca's repossession.

91.     Once Mr. Sarber protested the repossession, Bribiesca lost the right to continue with the repossession.

92.     Nonetheless, Bribiesca continued with his repossession and thereby breached the peace.

93.     Additionally, Bribiesca enlisted the help of law enforcement officers to effectuate his repossession and thereby breached the peace.

94.     By continuing with his repossession after he lost the right to do so, Bribiesca violated 15 U.S.C. § 1692f(6)(A) by taking non-judicial action to effect dispossession of Mr. Sarber's property where the property was exempt by law from such dispossession.

WHEREFORE, Mr. Sarber prays for relief and judgment, as follows:

a)   Adjudging that Bribiesca violated 15 U.S.C. § 1692f(6)(A);

b)   Awarding Mr. Sarber statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c)   Awarding Mr. Sarber actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Mr. Sarber reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e) Awarding Mr. Sarber pre-judgment and post-judgment interest as permissible by law; and

f) Awarding such other and further relief as the Court may deem proper.

**COUNT II**
**VIOLATION OF 15 U.S.C. § 1692f(6)(A)**
**BRANTLEY**

95. Mr. Sarber repeats and re-alleges each factual allegation contained above.

96. Kansas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." Kan. Stat. § 84-9-609(b)(2).

97. However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. *Id*.

98. A repossession agent breaches the peace if he continues with a repossession over a consumer's protest. *See Marcus v. McCollum,* 394 F.3d 813, 820 (10th Cir. 2004); *Dixon v. Ford Motor Credit Co.*, 72 Ill. App. 3d 983, 988, 391 N.E.2d 493, 497 (1979); *Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 812, 508 N.W.2d 449, 455 (Ct. App. 1993) ("We conclude that the undisputed fact is that Hollibush or her fiancé told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."); *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App. 1973), *dismissed* (Apr. 3, 1974) (because consumer protested repossession secured party was forced to either go to court or repossess vehicle at time when the consumer would not notice and protest); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f [a] repossession is verbally or otherwise contested at the actual time of and in the

immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *First & Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[I]t is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."); *Morris v. First Nat. Bank & Tr. Co. of Ravenna*, 21 Ohio St. 2d 25, 30, 254 N.E.2d 683, 686 (1970); *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110, 387 S.E.2d 144, 146 (1989) (agreeing with most courts that repossession in the face of a debtor's oral protest constitutes a breach of the peace); *Martin v. Dorn Equip. Co.*, 250 Mont. 422, 427, 821 P.2d 1025, 1028 (1991) (quoting J. Sheldon & R. Sable, *Repossessions,* § 6.3 (1988)) (" '[T]he general rule is that the creditor cannot . . . seize any property over the debtor's objections.' ").

99.     Mr. Sarber loudly and unequivocally protested Bribiesca's repossession.

100.     Once Mr. Sarber protested the repossession, Bribiesca lost the right to continue with the repossession.

101.     Nonetheless, Bribiesca continued with his repossession and thereby breached the peace.

102.     Additionally, Bribiesca enlisted the help of law enforcement officers to effectuate his repossession and thereby breached the peace.

103.     By continuing with his repossession after he lost the right to do so, Bribiesca violated 15 U.S.C. § 1692f(6)(A) by taking non-judicial action to effect dispossession of Mr. Sarber's property where the property was exempt by law from such dispossession.

104.     Brantley, by virtue of its status as a "debt collector" under the FDCPA, is liable for the conduct of Bribiesca—the debt collector it retained to collect on its behalf

WHEREFORE, Mr. Sarber prays for relief and judgment, as follows:

15

a) Adjudging that Bribiesca violated 15 U.S.C. § 1692f(6)(A);

b) Adjudging that Brantley is liable for Bribiesca's violation of 15 U.S.C. § 1692f(6)(A)

c) Awarding Mr. Sarber statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

d) Awarding Mr. Sarber actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

e) Awarding Mr. Sarber reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

f) Awarding Mr. Sarber pre-judgment and post-judgment interest as permissible by law; and

g) Awarding such other and further relief as the Court may deem proper.

### COUNT III
### VIOLATION OF KAN. STAT. § 84-9-609(B)(2)
### CFCU

105.    Mr. Sarber repeats and re-alleges each factual allegation contained above.

106.    Kansas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." Kan. Stat. § 84-9-609(b)(2).

107.    However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. *Id*.

108.    A repossession agent breaches the peace if he continues with a repossession over a consumer's protest.

109.    Secured creditors have a nondelegable duty not to breach the peace when they repossess secured collateral. The courts may find them liable for the acts of independent contractors who breach the peace in the course of repossessing secured collateral. Official

comment 3 to Kan. Stat. § 84-9-609 ("In considering whether a secured party has engaged in a breach of the peace, however, courts should hold the secured party responsible for the actions of others taken on the secured party's behalf, including independent contractors engaged by the secured party to take possession of collateral."); *see also Doucette v. Belmont Sav. Bank*, No. ESCV20161596D, 2017 WL 2427566, at *2 (Mass. Super. Apr. 14, 2017); *Binion v. Fletcher Jones of Chicago, Ltd.*, 2014 IL App (1st) 131710-U, ¶ 19; *Williamson v. Fowler Toyota, Inc.*, 1998 OK 14, 956 P.2d 858; *DeMary v. Rieker*, 302 N.J. Super. 208, 695 A.2d 294 (App. Div. 1997); *Robinson v. Citicorp Nat. Servs., Inc.*, 921 S.W.2d 52, 55 (Mo. Ct. App. 1996); *Mauro v. Gen. Motors Acceptance Corp.*, 164 Misc. 2d 871, 876, 626 N.Y.S.2d 374, 377 (Sup. Ct. 1995); *Clark v. Assocs. Commercial Corp.*, 877 F. Supp. 1439, 1448 (D. Kan. 1994); *Hester v. Bandy*, 627 So. 2d 833, 843 (Miss. 1993); *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 154 (Tex. 1992); *Sammons v. Broward Bank*, 599 So. 2d 1018, 1019 (Fla. Dist. Ct. App. 1992); *McCall v. Owens*, 820 S.W.2d 748, 752 (Tenn. Ct. App. 1991); *Massengill v. Indiana Nat'l Bank,* 550 N.E.2d 97, 99 (Ind. Ct. App.1990); *Nichols v. Metro. Bank*, 435 N.W.2d 637, 640 (Minn. Ct. App. 1989); *Gen. Fin. Corp. v. Smith*, 505 So. 2d 1045, 1047 (Ala. 1987); *Henderson v. Security Nat'l Bank,* 72 Cal. App.3d 764, 140 Cal. Rptr. 388, 390–91 (1977).

110.    CFCU's repossession agent, Bribiesca, breached the peace by continuing his repossession in the face of Mr. Sarber's loud, ardent, and unequivocal protest.

111.    Additionally, Bribiesca enlisted the help of law enforcement officers to effectuate his repossession and thereby breached the peace.

112.    CFCU violated Kan. Stat. § 84-9-609(b)(2) when its repossession agent, Bribiesca, breached the peace to repossess Mr. Sarber Vehicle.

WHEREFORE, Mr. Sarber prays for relief and judgment, as follows:

a) Adjudging that CFCU violated Kan. Stat. § 84-9-609(b)(2);

b) Awarding Mr. Sarber statutory damages, pursuant to Kan. Stat. § 84-9-625(c)(2);

c) Awarding Mr. Sarber actual damages, pursuant to Kan. Stat. § 84-9-625(c)(1);

d) Awarding Mr. Sarber pre-judgment and post-judgment interest as permissible by law; and

e) Awarding such other and further relief as the Court may deem proper.

**COUNT IV**
**VIOLATION OF 42 U.S.C. § 1983**
**BRIBIESCA AND CFCU**

113.    Mr. Sarber repeats and re-alleges each factual allegation contained above.

114.    The Fourth Amendment of the U.S. Constitution protects citizens from unlawful seizure.

115.    The Fourteenth Amendment of the U.S. Constitution protects citizens from deprivation of property without due process of law.

116.    The United States Supreme Court has held private actors can be liable for depriving parties of Constitutional Rights.  See *Lugar v. Edmondson Oil Co., Inc.*  102 S.Ct. 2744, at 2755. The Supreme Court enunciated a two part test:

> First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he . . . has acted together with or has obtained significant aid from state officials . . . .

*See Coleman v. Turpen,* 697 F.2d 1341 at 1345 citing *Lugar.* 102 S.Ct. 2744.

117.    In repossessing the Vehicle, Bribiesca and CFCU exercised their privilege to repossess a vehicle conferred on them by Kan. Stat. § 84-9-609(b)(2).

118.    In repossessing the Vehicle, Bribiesca and CFCU obtained significant aid in their repossession by Finch and Lothman, officials of the State.

119.    Bribiesca and CFCU's repossession was carried out in joint action with Finch and Lothman.

120.    Finch and Lothman were dressed in their full uniforms, with their badges of office, and were armed with firearms.

121.    Finch and Lothman demanded that Mr. Sarber comply with the repossession and threatened him with arrest if he did not cease his protests.

122.    Bribiesca and CFCU's repossession was substantially assisted by Finch and Lothman.

123.    Bribiesca and CFCU's repossession constitutes state action.

124.    Bribiesca and CFCU, acting willfully and in concert with Finch and Lothman, engaged in conduct that deprived Mr. Sarber of his constitutional rights.

125.    By seizing the vehicle under color of law and denying him due process under color of law, Bribiesca and CFCU deprived Mr. Sarber of rights and privileges guaranteed under the United States Constitution.

WHEREFORE, Mr. Sarber prays for relief and judgment, as follows:

a)  Adjudging that Bribiesca and CFCU unlawfully seized Plaintiff's vehicle in violation of the Fourth and Fourteenth amendments of the United States Constitution;

b)  Awarding Mr. Sarber actual damages;

c)  Awarding Mr. Sarber punitive damages as against Bribiesca and CFCU;

d)  Awarding Mr. Sarber his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b);

e)  Awarding Mr. Sarber pre-judgment and post-judgment interest as permissible by law; and

f)  Awarding such other and further relief as the Court may deem proper.

## COUNT V
## COMMON LAW CONVERSION
## BRIBIESCA

126.    Mr. Sarber repeats and re-allege each factual allegation contained above.

127.    Bribiesca had no legal authority to take possession of Mr. Sarber's vehicle or its contents.

128.    Mr. Sarber had immediate right to possession of the vehicle and its contents at the time Bribiesca, took the Vehicle.

129.    Bribiesca's repossession of the vehicle and its contents constitutes conversion under Kansas Law.

WHEREFORE, Mr. Sarber prays for relief and judgment, as follows:

a)  Adjudging that Bribiesca converted Mr. Sarber's vehicle and its contents;

b)  Awarding Mr. Sarber his actual damages in an amount to be proved at trial;

c)  Awarding Mr. Sarber punitive damages in an amount to be proved at trial

d)  Awarding Mr. Sarber pre-judgment and post-judgment interest as permissible by law; and

e)  Awarding such other and further relief as the Court may deem proper.

## TRIAL BY JURY

130.    Plaintiff is entitled to and hereby demands a trial by jury. Plaintiff requests that trial be held in Kansas City, Kansas.


Dated: September 21, 2018

Respectfully submitted,

/s/ Anthony LaCroix
Anthony LaCroix
KS Bar No. 24279
406 W. 34th Street, Suite 810
Kansas City, MO 64111
Telephone:  (816) 399-4380
Fax:  (816) 399-4380
Email:  tony@lacroixlawkc.com
*Lead Counsel for Plaintiff*

*Co-counsel with Thompson Consumer Law Group*

**Correspondence Address:**

Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206